## STATE v. JOHN O'BRIEN.

Upon a joint trial of several for murder, the court may, in the exercise of its discretion, upon the conclusion of the evidence for the government, submit to the jury, separately, the cases of any of those jointly indicted, or, if the evidence is of so slight a nature as to warrant it, advise the jury, that it was their duty to acquit them; and if the jury concur in the opinion expressed by the court, they may, at once, return a verdict of not guilty; but this is a matter resting entirely in the discretion of the court, and it is no ground for the new trial of a prisoner convicted, that it was not done, especially if it does not appear that the prisoner was in any way prejudiced by the refusal of the court to do it.

Books of medical jurisprudence, on such a trial, are not admissible as evidence to pass to the jury, wanting, as they do, the sanction of an oath; and this, though the counsel for the prisoner ceased to cross examine a medical expert, upon the ground that he might afterwards quote the book against him; nor does the fact that the expert read passages in the book, to which, in cross examination, he was referred, and in relation to which he answered questions, render the book admissible, or give to it the required sanction.

Newly discovered evidence is no ground for new trial, if cumulative, when, as to the point to which it relates, it appears to the court to be of very little weight.

The separation of one of the jurors from his fellows, during such a trial, permitted by the officer in charge of the jury, for a necessary change of linen, whilst the jury were passing the juror's house,—the juror being absent no longer than was necessary to effect his purpose, and under the eye of the officer in charge, except when in the chamber in which he made the change,—is no ground for a new trial, there being no proper ground to suspect that anything injurious to the rights of the prisoner occurred to the juror during his short absence from his fellows, and when he was out of the sight of the officer.

JOHN O'BRIEN, indicted jointly with five others, for the murder of Daniel C. Bennett on the fourth day of July, 1860, was, at the September term of this court for the county of Providence, in the same year, convicted, whilst those jointly indicted with him were acquitted.

The evidence disclosed, in general, that a number of Irishmen, of whom the prisoner was one, from some real or supposed affront to them offered by Bennett, who was a stranger, set upon and hustled him in a drinking shop in Canal street, Providence, and there so beat and kicked him, especially about the head, that he shortly afterwards died. Evidence was produced by the government tending to show that O'Brien, particularly, whilst Bennett was crowded by the others against the counter of the shop, stood upon it by the side of him, and having on a heavy pair of boots, kicked him, repeatedly, with great violence, in the head. Surgeons, also, who examined the head and brain of Bennett, after death, testified, that in their opinion, the violence committed upon Bennett on this occasion was the cause of his death. The jury having returned a verdict of guilty against O'Brien, he moved for a new trial, upon the grounds, that the verdict was against the weight of the evidence,—of the discovery of new and further evidence,—of the separation of the jury during the trial,—and of errors of law in the rulings of the court upon matters of evidence; the particulars of all which are stated in the opinion of the court with sufficient distinctness to make their decision, and the reasons for it, intelligible.

*J. M. Blake, for the motion.*

*W. S. Burgess, Attorney General, against it.*

BRAYTON, J. In examining the testimony in this case, we are not able to agree with the counsel for the prisoner, that the verdict rendered by the jury was against the weight of the evidence, or that the verdict should have been one for manslaughter. On the contrary, we are obliged to come to the conclusion, that the verdict, as rendered by the jury, is warranted by the evidence given to them.

The physicians who conducted the *post mortem* examination were of the opinion, and so testified, that the deceased died from violence inflicted upon his head; and the testimony was strong, as well from the witnesses for the government as from those introduced for the defence, that the most violent blows received by the deceased were inflicted by the prisoner upon the head of the deceased, by kicking with a heavy pair of boots,—he, the prisoner, standing upon the counter of a shop, while the deceased

stood by the side of it, so crowded upon by others that he could not defend himself. There was an entire absence of any evidence of provocation given by the deceased for blows of any kind, so much so, that no question was put to the witnesses by the prisoner's counsel indicating that any such provocation had been given.

That the court refused to discharge two of those indicted jointly with the prisoner, after the testimony for the prosecution had been concluded, or refused to direct the jury to return a verdict of not guilty against them, does not, in our opinion, furnish a ground for a new trial. The court might, upon the conclusion of the evidence for the government, in the exercise of its discretion, have submitted to the jury the cases of any of those jointly indicted, and might, if the evidence were of so light a nature as to warrant such instruction, have advised the jury, that it was their duty to acquit; and the jury might, thereupon, if they concurred in the opinion expressed by the court, have returned, at once, a verdict of not guilty. But all this is a matter resting in the discretion of the court, and it is no ground of objection by another prisoner, that this was not done. In this case, it does not appear that the prisoner was in any way prejudiced by the refusal of the court. Had the persons to whom the motion related been acquitted and discharged of the indictment, they would not have aided the prisoner's defence. One of them was, by a former conviction, disqualified to testify, and it is not suggested that the other would, or could, have testified to any fact in favor of the prisoner.

In his second, or amended petition, the prisoner states other reasons for a new trial. The first is unsupported by evidence, either that the witness, as the petition alleges, stated that his opinion was founded solely upon a passage in Taylor's Medical Jurisprudence, or that the prisoner had been informed that the book contained no such passage; but had it been supported, it would have furnished no ground for a new trial. The book offered to be read to the jury was not admissible as evidence. No evidence, in the nature of parol testimony, could properly pass to them except under the sanction of an oath; and upon this ground, books of science are excluded, notwithstanding the

opinion of scientific men that they are books of authority, and valuable as treatises. Scientific men are admitted to give their opinions as experts, because given under oath; but the books which they write, containing them, are, for want of such oath, excluded. The exclusion of the books, therefore, in this case, furnishes no ground for a new trial. Neither does the fact of such rejection, coupled with the fact that the counsel dismissed the witness under the belief that such book might be read to contradict him, furnish any ground for recalling him. The object of the counsel could not be obtained by any further examination. The book was not admissible for any purpose, not having the proper sanction. Neither does the fact that the witness read passages in such book, to which, in cross examination, he was referred, and in relation to which he answered questions, render the book any more admissible, or give it the required sanction to make it evidence.

Another ground for a new trial set out in this petition is, the discovery of new and further evidence. The evidence said to be newly discovered goes to different points of the case. One fact sought now to be proved is, that a colored man, by the name of Brown, saw, on the day of the murder, a tall, stout man near Martin street, fighting; that he was knocked down, and when he got up he put his hands upon his head, as if it were badly hurt; and that he was bloody. The witness, however, does not identify the deceased as Bennett, so as to make the evidence at all material, or applicable to the prisoner's case.

Though evidence was offered, on the trial, to show the quantity of liquor drank by the deceased on the day he was assaulted by the prisoner, and to show the condition of the deceased in point of sobriety, it is now said, that it can be proved that he drank much more strong drink than, from the evidence, then appeared. This evidence is purely cumulative; and in reference to the testimony as to the actual condition of the deceased, of very little weight. The witness, who it is alleged will testify as to this, is shown to be of bad reputation for truth, and will be entirely contradicted by other new witnesses. Under these circumstances we should not be warranted in giving a new trial, that this witness might be heard.

A more important piece of evidence said to be discovered is, that the prisoner was first assaulted by the deceased. This was a matter of vital importance to the prisoner's defence against a charge of murder. Two witnesses were offered by him, who came in before the affray began, and remained till it was over, and the parties separated. One of them testified that he saw the whole; yet he said nothing of any assault by the deceased, and though, if it were true, it could not be unknown to the prisoner, yet neither he, nor his counsel, put any questions to either of these witnesses upon this subject. No such question was, in the defence, put to any witness. The persons from whom this evidence comes were the companions and associates of the prisoner. Any reasonable diligence would have enabled him to have produced this evidence on the trial, if it were true. But another objection to it is, that the persons from whom this evidence is to come are shown to be of bad reputation for truth, and unworthy of credit. If this evidence were all to go to the jury, or if it had been submitted to the jury who tried this cause, it would not, in our judgment, have changed the verdict, and ought not to have done so, and its absence furnishes no sufficient ground for a new trial.

The remaining ground for a new trial is, that one of the jurors, after the jury was empanelled and before the termination of the trial, and while the jury was in charge of the officer, separated from his companions, and went into his own house. It appears from the affidavit of the officer, that the juror was permitted by him to go into the house, for the purpose of changing his shirt; that he was gone from three to five minutes; was seen by the officer to go up stairs, into a room up stairs, and again, as he came down to rejoin the jury, who remained below awaiting his return; and, as the officer believes, he could not, without the officer's notice, have been conversed with, improperly, by anybody. It is well settled, that the separation of the jury, where no injury has ensued to the party objecting, will not be ground for setting aside a verdict, unless the separation be attended with suspicion of abuse, or of some improper influence. *People* v. *Douglas*, 4 Cow. 26; *Burrill* v. *Phillips*, 1 Gallison, 36; *Crane* v. *Sayer*, 1 Halst. 110; *Shepherd* v. *Bayler*, 2 South. 827; 1

Chitty's Crim. Law, 628, n. B. From the facts which appear as to the separation of this juror from his fellows, there seems to be no proper ground of suspicion that anything improper occurred during his short absence from them, and from the officer. It was reasonable to allow him to change his linen, and to allow him time, and that degree of privacy, necessary and proper for that purpose. He was absent no longer than was reasonably required. There is no suggestion that he saw there any one not a member of his own family. He must be presumed to have gone for the purpose for which he asked leave ; and he seems to have returned so soon as it was accomplished. We can see no ground to suspect that the prisoner could have been injured by the separation, and if not, it furnishes no ground for a new trial.

The motion for a new trial is denied.