[No. 20483.   In Bank. — March 5, 1889.]

# THE PEOPLE, RESPONDENT, *v.* LEE CHUCK, APPELLANT.

CRIMINAL LAW — HOMICIDE — EVIDENCE — STRIKING OUT IRRESPONSIVE ANSWER — APPEAL — ERROR WITHOUT PREJUDICE. — Upon a prosecution for murder, when a witness, upon being asked how long he had known the defendant, replied that he knew him about a year before he killed the deceased, it is error to refuse to strike out so much of the answer as referred to the killing as not responsive to the question; but when the record shows that the killing of the deceased by the defendant was an undisputed fact, the defense being that the killing was justifiable, such error is harmless.

APPEAL — RULING UPON UNANSWERED QUESTION. — When there is nothing in the record to show that a question to which an objection was overruled was answered by the witness, the ruling is immaterial.

78 317
84 474

78 317
88 607

78 317
94 48
95 231

78 317
100 463

78 317
102 150

78 317
d105 492

78 317
d130 165

78 317
138 471

78 317
139 162

EVIDENCE — DEPOSITION ON FORMER TRIAL — CROSS-EXAMINATION. — Upon the cross-examination of a witness as to statements made by him upon a former trial, he has the statutory right to have such previous statements presented to him and read, if in writing.

CRIMINAL LAW — HOMICIDE — FLIGHT OF ACCOMPLICE — EVIDENCE. — Evidence of the disappearance of other persons accused of complicity in the homicide, and that, though every effort had been made to arrest them under warrants for their arrest, they could not be found, is not admissible to rebut evidence on the part of the defendant tending to prove that the homicide was committed in self-defense.

ID. — ALIBI — EVIDENCE. — Evidence that another person, accused of complicity with the defendant in the homicide, was found apparently in a place of hiding, to avoid arrest, several hours after the homicide, is not competent to disprove an *alibi* attempted to be proved by the defendant, there being nothing to show that the whereabouts of such person tended in any way to establish the presence of the defendant at the place of the killing.

ID. — TRIAL — IMPROPER COMMENTS OF DISTRICT ATTORNEY. — Where the attorney for the state, in urging the admission of incompetent evidence, comments upon it at length, with the evident intent of prejudicing the minds of the jury against the defendant, it is error for the judge to allow him to proceed in such remarks against the objection of the defendant.

ID. — NEW TRIAL — MISCONDUCT OF JURY. — Where there is clear and undisputed proof of the drinking of intoxicating liquor by the jury while actually deliberating upon their verdict in a capital case, it is such misconduct as is ground of new trial, although the liquor was served with a meal at a restaurant, and irrespective of the quantity taken, or the effect produced.

ID. — COUNTER-AFFIDAVITS — CROSS-EXAMINATION — DISCRETION. — It is not error for the court to refuse to allow the defendant in a criminal case to cross-examine parties who file counter-affidavits in support of the verdict, when assailed by the defendant for misconduct of the jury. The defendant is not entitled to such cross-examination as matter of right, though the court might, in its discretion, have allowed it.

INSTRUCTIONS. — Although one instruction taken alone may be subject to criticism, it is sufficient if the law on that point is fully and fairly stated by the instructions taken together as a whole.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

Upon the trial, a witness for the prosecution, Chow Hin, was asked on cross-examination by the defendant if he did not testify to certain things in the police court; and on re-examination the prosecuting attorney presented and read to the witness his written deposition given in

the police court, and asked him if he did not so testify there, the evidence being substantially the same as that given by the witness upon the present trial.    Further facts are stated in the opinion of the court.

*George A. Knight*, for Appellant.

Evidence that a witness has on other occasions made statements similar to what he has testified in the cause is not admissible.    (1 Greenl. Ev., sec. 469;  Roscoe's Ev., 96;  *People* v. *Doyell*, 48 Cal. 85;  *People* v. *Jacobs*, 49 Cal. 386;  *Deshon* v. *Merchants' Ins. Co.*, 11 Met. 209;  *Robb* v. *Hackley*, 23 Wend. 50;  *Jackson* v. *Etz*, 5 Cow. 314, 320;  *Howe* v. *Thayer*, 17 Pick. 91.)    The district attorney violated his duty, and prevented a fair and impartial trial.  (*People* v. *Montague*, 63 Mich.;  *People* v. *Mitchell*, 62 Cal. 411.)    The evidence as to the search for others accused of the same crime was inadmissible.    (*People* v. *Sharp*, 107 N. Y. 427.)    The accused was entitled to be confronted with and to cross-examine the persons who made affidavits against him.    (Const., art. 1, sec. 13;  *People* v. *Bush*, 68 Cal. 634.)    The drinking of liquors by the jury was of itself prejudicial misconduct.    (*People* v. *Gray*, 61 Cal. 164;  44 Am. Rep. 549;  *Leighton* v. *Sargent*, 31 N. H. 119;  64 Am. Dec. 329; *People* v. *Douglass*, 4 Cow. 26;  15 Am. Dec. 332;  *Wilson* v. *Abrahams*, 1 Hill, 208;  *Commonwealth* v. *Roby*, 12 Pick. 519, 520;  *Jones* v. *State*, 13 Tex. 168;  62 Am. Dec. 550.)    Misconduct of the jury is presumed to be prejudicial.    (*Eastwood* v. *People*, 3 Park. Cr. 48;  *State* v. *Prescott*, 7 N. H. 287.)

*Attorney-General Johnson*, for Respondent.

The prosecution had the right to show the statements of the witness made in his evidence given in the police court.    (*People* v. *Ching Hing Chang*, 74 Cal. 389.)    The district attorney had the right to argue in support of his offer of proof.    (*State* v. *Moseley*, 31 Kan. 355;  *State* v. *Yordi*, 30 Kan. 221.)    His course is not ground of rever-

sal. (*People* v. *Sharp*, 107 N. Y. 427.) The ruling of the court upon the conflicting affidavits cannot be disturbed here. (*People* v. *Dye*, 62 Cal. 523.) The prosecution properly proved that no injury resulted from the alleged misconduct. (*People* v. *Brannigan*, 21 Cal. 339; *People* v. *Symonds*, 22 Cal. 348; *People* v. *Dennis*, 39 Cal. 625; *People* v. *Turner*, 39 Cal. 371; *People* v. *Anthony*, 56 Cal. 397.) The following cases would be in point for appellant, if the jury in this case had drank distilled liquors or ardent spirits instead of claret wine: *People* v. *Gray*, 61 Cal. 164; 44 Am. Rep. 549; *People* v. *Douglass*, 4 Cow. 26; 15 Am. Dec. 322; *Brant* v. *Fowler*, 7 Cow. 562; *State* v. *Bullard*, 16 N. H. 144; *Leighton* v. *Sargent*, 31 N. H. 137; *Jones* v. *State*, 13 Tex. 168; 62 Am. Dec. 550; *Gregg* v. *McDaniel*, 4 Harr. (Del.) 367. The following cases are opposed to appellant's contention here: *Wilson* v. *Abrahams*, 1 Hill, 207; *State* v. *Caulfield*, 23 La. Ann. 148; *Pelham* v. *Page*, 6 Ark. 536; *Davis* v. *People*, 19 Ill. 76; *Thompson* v. *Commonwealth*, 8 Gratt. 656; *State* v. *Upton*, 20 Mo. 398; *Rowe* v. *State*, 30 Tenn. 441; *Roman* v. *State*, 41 Wis. 312; *Westmoreland* v. *State*, 45 Ga. 225; *Kee* v. *State*, 28 Ark. 155; *Russell* v. *State*, 53 Miss. 382.

WORKS, J.—The appellant was charged, tried, and convicted of the crime of murder in the first degree, and sentenced to death. He moved the court below for a new trial, which was denied, and now prosecutes this appeal.

Several grounds for reversal are urged, which may be grouped and considered as follows: 1. Alleged erroneous rulings of the court below on the admission and exclusion of evidence; 2. Misconduct of the district attorney; 3. Misconduct of one of the jurors in visiting and inspecting certain premises during the trial, unaccompanied by the officer of the court, and without leave; 4. Misconduct of the jury in drinking intoxicating liquors while deliberating upon their verdict; 5. Error in the instructions of the court.

The evidence is not all in the record. The bill of exceptions recites substantially that there was evidence tending to show that the appellant shot and killed one Yen Yuen on one of the streets of the city of San Francisco; that he attempted to escape, was followed by an officer, whom he also attempted to shoot, was arrested, and found to be armed with four revolvers, and protected by a coat of mail, made of links of steel, worn under his clothing; that at the time of the shooting he was accompanied by several other persons, who also ran away immediately afterwards; that the deceased had a pistol on his person which was fully loaded, none of the chambers having been discharged. There is no general statement showing what the defendant proved in his defense or its tendency.

1. During the cross-examination of one Chow Hin, a witness for the prosecution, he was asked by the defense how long he had known the defendant. He answered: "Several years ago, because it was on last year six months twenty-eight day that he killed Yen Yuen, and I knew him about a year before that." The defendant moved the court to strike out so much of the answer as referred to the killing of Yen Yuen by the defendant, on the ground that it was not responsive to the question. The motion should have been sustained, but, as the record comes to us, we cannot say that any injury could have resulted from the ruling of the court. The killing of the deceased by the defendant may have been, and we infer from the matters appearing in the record was, an undisputed, though perhaps not an admitted fact, the defense being that the killing was justifiable. If so, the statement of the witness was harmless.

The same witness was asked whether he did not testify to certain things before the police court, and answered that he did; whereupon the prosecution asked him whether he did not at the same time make certain other statements. To this the defendant objected, and

the objection was overruled, but there is nothing in the record to show that the question was answered by the witness. To render a ruling in favor of the admission of evidence material, the record must show that the question objected to was answered, thereby carrying the objectionable evidence to the jury. It is unnecessary, therefore, for us to determine whether the evidence that might have been elicited was competent or not.

The defense, on cross-examination of one Sorr Sinn, asked whether he did not, or a former trial of this case, make certain statements, when the following occurred: The district attorney objected on the authority of *People* v. *Ching Hing Chang,* 74 Cal. 389, holding that whatever the witness might have said at the former trial he had the statutory right to have it presented to him, and read, if in writing. The court remarked to counsel for defendant: "I would sustain you if I could reverse the supreme court, but I cannot." As the rule referred to is well established, and one in every respect fair and just, it is fortunate that the court below was not possessed of the power to reverse it. There was no error in this ruling.

The bill of exceptions recites: "Evidence having been introduced by the prosecution tending to show that Lee Chuck, the defendant, and Quan Gee and Chung Kit and Chung Wye and Chung Sam were present at and participated in the killing of Yen Yuen, the deceased, the defense then introduced evidence tending to show an *alibi* for Quan Gee and Chung Kit, and also tending to show that Lee Chuck and Chung Wye and Chung Sam were first attacked by Yen Yuen and Chow Hin and others, and that Lee Chuck and Chung Wye and Chung Sam shot in self-defense at Yen Yuen and his party." The prosecution then proved by the witness Cox that he was an officer; that he had received certain warrants of arrest for the persons above named, and that he had never been able to serve two of them, although he had

made every effort to find the parties, and the warrants not served were offered in evidence and excluded; but the court permitted the witness to testify that he had searched diligently for the parties who had not been found, and that if he could have found them he would have arrested them on the charge set out in them, which the district attorney had openly stated to the jury was the same offense for which the defendant was being tried. As to the other party named, the prosecution was permitted to prove that he had been arrested where he had been found several hours after the shooting in a small "cubby hole" at the top of a house near the place of the shooting. The witness was permitted to testify minutely to the nature of the room, its furniture, the means of reaching it, with the view, we suppose, of showing that he was there in hiding to avoid arrest. The evidence was objected to by the defense on the general grounds that it was immaterial and incompetent. For what purpose or upon what theory the evidence was admitted does not clearly appear. We can only infer it from the statement of the district attorney, made in support of his offer, which will be set out hereafter in connection with another point made. His position, in brief, was, that as to those who were not found it tended to show that they were not innocent and acting in self-defense, as claimed, or they would not have run away; and that the fact that they were not present to explain what occurred at the time of the shooting was a circumstance against the defendant, and was "offered so show the utter improbability of this self-defense fabrication; that is why this is offered."

There is nothing to show that the defendant was in any way responsible for their absence, or that he was not as desirous that they should be present as the prosecution. This is to permit the act or conduct of one party, after a crime is claimed to have been committed, indicating his guilt, to be proved as against another in

no way connected with such act or conduct. We are wholly unable to see upon what rule of law or justice such a ruling can be upheld. *People* v. *Sharp*, 107 N. Y. 427, is a case in point. There the defendant was charged with bribery. The prosecutor, as a part of his evidence, offered to show by a detective officer that he was employed to serve subpœnas upon three other parties, all of whom the district attorney claimed to be material and competent witnesses, and to show, further, that the detective was unable to find them in the state, but did find one of them in Canada, and learned that the others were there, but did not see them. These persons were named in the indictment as co-defendants with Sharp, and the evidence already in tended to show that they were mediaries between the persons offending against the statutes relating to bribery. It was not claimed by the prosecution that the defendant was privy to their absence. The district attorney disclaimed any intention of proving the flight of those persons as co-conspirators, and so make use of their absence as evidence of guilt, or as proof by their conduct that the accusation against the defendant was true, but for the purpose of explaining his inability to produce them as witnesses. In the case before us, the district attorney openly avowed that the evidence was offered to disprove the defendant's defense, or, in other words, to prove his guilt. In the case referred to, the court says: "The evidence already in was, so far as Sharp was concerned, altogether circumstantial, but tended to show that the persons named, or some of them, were qualified from actual knowledge to give evidence bearing more or less directly upon the very point in issue. We think evidence of their absence was inadmissible. It could have no legitimate bearing upon the issue, and the danger is very great, that such testimony will prejudice a party against whom it is offered. It may be, and frequently is, admissible in answer to evidence from the other side, which would

naturally call for an explanation. But the absence out
of the jurisdiction of the court of an associate, or one
seemingly connected with the defendant in the act
charged, is easily construed as evidence of guilt, and
unless the occasion calls for such proof, it should not
be allowed. It is an old maxim that 'he confesses the
fault, who avoids the trial,' but in its application, even
to the fugitive, there is great danger of error. A man
may avoid the trial for many motives besides conscious-
ness of guilt, but however actuated, his conduct can in
no degree, in a court of justice, reflect upon another.
Its admission in this case was virtually saying to the
jury: 'There is better evidence, and it might be had
from the defendant's associates. It is not the fault of
the prosecution that the evidence is not before you, but
because of the voluntary act of those who, with the de-
fendant, stand charged with the offense.' Thus the non-
production of the witnesses is made to supply the place
of proof of the issue; with that issue the evidence has
no possible connection. The rule is, that where a party
to an issue on trial has proof in his power which, if
produced, would render material, but doubtful, facts cer-
tain, the law presumes against him, if he omits to pro-
duce that proof, and authorizes a jury to resolve all
doubts adversely to his defense. But the rule cannot
be applied unless it appears that the proof, whether it is
a living witness or paper, is within his power. It is easy
to see that the evidence offered here might be used for
an ulterior purpose, although not pressed by the prose-
cution, yet entertained and made effective by the jury,
and there certainly could be no presumption that the
prosecution had the power to produce any particular
witness, certainly not one of those named, nor did the
law require it of them. It is, therefore, impossible to
find any reason for, or lawful purpose to be gained by,
the proof offered, and its admission was a very danger-
ous innovation upon the general rule, which excludes it

as irrelevant to the issue. . . . . Proof even of the ab-
sence of these persons was inadmissible. But that was
not all. The proof was not only of their absence, but of
unavailing search by a detective, the service of a sub-
pœna upon some of them, and the failure to obey its
mandate. Under the circumstances of the case, the
ruling of the court in this instance may not have been
of much importance, and upon it alone we should not
grant a new trial. But the legal principle which re-
quires relevant and material evidence, and admits no
other, is important; and, however serious the charge
against an accused may be, and however great the evil
it uncovers, he cannot properly be made the subject of a
judicial sentence, unless the crime is substantiated ac-
cording to the established rules of evidence."

It will be seen that the evidence improperly admitted
was held not to be of sufficient importance to warrant a
reversal of the case, but it must be borne in mind that
the evidence there was not offered to prove guilt, while
here it was offered for that purpose, and so went to the
jury. Having gone to the jury for that purpose, its in-
jurious effect upon the rights of the defendant must be
apparent. We hold that this was a fatal error, for which
a new trial should have been granted.

As to the evidence of the arrest of the party who was
found by the officer, it was claimed by the district attor-
ney to have been competent to disprove an *alibi* at-
tempted to be proved by the defendant. If competent
at all for this purpose, the proof of his presence near the
scene of the alleged crime was all that the prosecution
was entitled to. The fact that there was a warrant for his
arrest for the crime for which the defendant was on trial,
and that he was found under circumstances tending to
show that he was in hiding, and seeking to avoid arrest,
were wholly immaterial. But we are quite clear that it
was not competent for that purpose. There is nothing
to show that his whereabouts tended in any way to

establish the presence of the defendant at the place of the killing, and it appeared that the time to which the testimony referred was several hours after the homicide occurred. It was error to admit the evidence.

2. It is claimed that the assistant district attorney was guilty of misconduct which prevented the defendant from having a fair trial. At the time the warrants above referred to were offered and under discussion, the following proceedings took place:—

"*Assistant District Attorney.*—The defense set up here is the plea of self-defense. They claim that Yen Yuen, Chow Hin, and other persons assaulted Lee Chuck, Chung Sam, and Chung Wye, and under such circumstances that would make Chow Hin the principal in an attempt to murder,—murder by way of lying in wait, which would be murder in the first degree. We now offer to show that upon the same day—

"*Attorney for Defendant.*—I object to the counsel's statement, and as to his offer of proof. He offered the warrants, and the objection is before the court.

"*Assistant District Attorney.*—I am answering your objection. We offer to show that upon the same day, the twenty-eighth day of July, Chow Hin, who, it is alleged, picked up Yen Yuen's pistol; Chow Hin, the unsuccessful murderer of Lee Chuck; and Chow Hin, the person who will be rated here as a highbinder and a gambler, —Chow Hin went down to the proper police authorities, and made complaint against Chung Sam and Chung Wye, and had warrants issued for their arrest for murder; that these warrants were placed by the chief of police in the hands of the most skillful detective in the Chinese quarter.

"*Attorney for Defendant.*—I most strenuously object to the statement of counsel as to the warrants, and what disposition was made of the warrants. He offered certain warrants against Chung Sam and Chung Wye, and I say it is improper to prejudice the jury by speaking

of cases,— of any other person except the defendant. The object is to prejudice the minds of the jurors against the defendant.

" *The Court.* — Proceed.

"*Attorney for Defendant.* — I except to the ruling of the court on behalf of the defendant.

"*Assistant District Attorney.* — I offer to show further that this skillful detective officer, who has had several years' experience — who has had eight or ten years' experience among the Chinese, searched high and searched low, and searched every Chinese outgoing steamer which he could search, and has not been able to discover either Chung Sam or Chung Wye, the innocent attacked parties who were with Lee Chuck at the time that Yen Yuen and Chow Hin and Fong Fat, and those other people, made this malicious attack upon them with pistols, on Washington Street. We want to go to the jury on that fact, and we want to ask why these men are not here. We want to know why they should run away from here; why they do not make their appearance here, if they were attacked; why these men who took part in this conflict do not come here to this court, and explain how it was, of all the people in the world, Chung Sam and Chung Wye, the men who were with Lee Chuck.

" *Attorney for Defendant.* — I protest now, in the name of justice, that the district attorney be not allowed to proceed in the manner in which he does. It is improper testimony, and an illegitimate manner to produce testimony before the jury.

" *Assistant District Attorney.* — It is not in this view that this testimony is offered.

" *Attorney for Defendant.* — I protest against it, and I want the record to show it.

" *Assistant District Attorney.* — It is offered to show the utter improbability of this self-defense fabrication; that is why this is offered."

We have been called upon many times to caution,

sometimes to rebuke, prosecuting officers for the over-zealous performance of their duties. They seem to forget that it is their sworn duty to see that the defendant has a fair and impartial trial, and that he be not convicted except by competent and legitimate evidence. Equally with the court, the district attorney, as the representative of law and justice, should be fair and impartial. He should remember that it is not his sole duty to convict, and that to use his official position to obtain a verdict by illegitimate and unfair means is to bring his office and the courts into distrust. We make due allowance for the zeal which is the natural result of such a legal battle as this, and for the desire of every lawyer to win his case, but these should be overcome by the conscientious desire of a sworn officer of the court to do his duty, and not go beyond it.

We regret to say that the assistant district attorney seems to have failed, in this instance, to apply this salutary check to his conduct. The evidence he was seeking to have admitted was clearly incompetent. What was said was not only an argument in favor of its admission, but as to its effect. The evident intent was to prejudice the jury against the defendant by commenting upon the conduct of others, over whose action he was not shown to have any control, and that in language the impropriety of which is apparent at a glance. The court was appealed to time and again to prevent it, but declined to do so. While we might hesitate to reverse the case on this ground alone, we hold it to have been error. See, as bearing on this point, *People* v. *Mitchell,* 62 Cal. 411, and cases cited; *State* v. *Smith,* 75 N. C. 306.

Questions of this kind usually arise out of the closing arguments of counsel, but the rule must be the same at whatever stage of the cause the improper language is used.

3. It is claimed that there was misconduct on the part of the jury which entitled the defendant to a new trial.

As to the alleged misconduct of one of the jurors in visiting and examining certain premises unattended by an officer, and alone, it was not made one of the grounds for a new trial, and for that reason cannot be considered here.

The grave charge is, that the jury drank intoxicating liquors while they were deliberating upon their verdict. The affidavits show, beyond question, that the case was given to the jury at 3:35 o'clock in the afternoon; that they had failed to agree up to the hour of 6:30, when they were taken, in charge of a deputy sheriff and bailiff, to a restaurant for dinner; that they were served with a "French dinner," and with other refreshments, partook of a half-dozen quart bottles of claret wine, and a half-bottle of cognac, the latter being used as flavoring for their coffee; that they were about an hour at the restaurant, when they returned to their room, and within two hours agreed upon the verdict that was returned into court. There are affidavits showing that when they returned from their dinner their conduct and appearance, or that of some of them, were such as to indicate that they had been indulging in intoxicating liquors, and it is alleged that their having done so resulted in their agreeing upon the verdict. The two officers in charge make affidavit that none of the jurors were intoxicated, or gave any evidence of being in that condition. Each of the jurors makes an affidavit, in which he admits that they drank wine, and took cognac in their coffee, but he does not know how many bottles. Their affidavits are, we believe, substantially, if not precisely, alike, and in each it is said: "And this affiant further avers that upon the said occasion this affiant was not drunk or intoxicated, and that this affiant's intelligence and good judgment were not obscured or affected in any way by intoxicating drinks of any character, and as far as his observation extended, no one of said jury became drunk or intoxicated upon said occasion, and

that the intelligence and good judgment of no one of said jury became or was obscured by intoxicating drinks upon said occasion"; and further, "that he, for himself, did not find any such verdict against the defendant by reason of partaking of the liquor and wine above mentioned; and this affiant repels and repudiates the truth of any insinuation that he, or so far as his observation extended any of the members of the jury, found any such verdict against the defendant by reason of partaking of the liquor and wine above mentioned." It appears, therefore, that the amount of liquors mentioned was consumed. Whether it was equally divided, one pint of the wine to each juror, does not appear. If any juror drank less, he has refrained from saying so, perhaps out of delicacy for the feelings of his associates, who would be convicted thereby of having taken more.

The learned attorney-general contends that this was not such misconduct as should reverse the case, because the wine was "California claret," and the cognac was used as a "flavoring for coffee." Whether he intends to insinuate that California claret is too weak to intoxicate, or to claim that to drink wine of our own make should not be treated as misconduct, does not appear; nor does he show that cognac is less effective when adulterated with coffee. The affidavits show that the wine was intoxicating, and the prosecution introduces the affidavit of the proprietor of the restaurant to show its age, quality, and probable effects. He says: "Said claret wine was a good quality of California Zinfandel wine, of four years of age"; and that he has "been engaged in the restaurant business for a period of ten years past; that he has had great experience with wines, and their effects; and that he scouts as foolish and absurd the idea that twelve full-grown men could be seriously or at all affected by using—if they did use—six bottles of claret at dinner, with a little cognac in their coffee afterwards."

. It must be conceded that this is some evidence that

the whole twelve could not have been seriously or at all affected, and perhaps that none of them were so affected, assuming that the wine and cognac were equally divided. We are thus led to consider, at the outset, whether this court should stop to inquire what was the effect of the drinking of these liquors. That the jury drank the liquors is not denied. The sole question raised is, whether the mind of any member of the jury was so affected thereby as to impair his intelligence or judgment, or render him less competent to transact with clearness and impartiality the grave duty resting upon him. It is infinitely more important that the channels of justice be kept pure and untainted than that the verdict against this defendant shall be maintained. The question is not a new one. In some cases it has been held that for a juror to take a drink of liquor during the trial was sufficient ground for granting a new trial. The case before us presents quite a different question. Here the trial had closed. The life of the defendant was in the hands of the jury. They were deliberating upon a question of the gravest consequence to the defendant, to society, and to themselves. They had, up to the time of partaking of the liquors, failed to agree, and soon after agreed upon and returned a verdict that, if sustained, must send the defendant to the gallows. It seems to us that if the fact that the jury drank intoxicating liquors, without proof that it affected their minds, or the conclusion reached by them, could be held sufficient to set aside the verdict in any case, no stronger case than the one before us could be presented. We are of the opinion that where the proof of the drinking is clear and undisputed, and that it was done while the jury were actually deliberating upon their verdict in a capital case, a verdict of conviction should not be allowed to stand. This is our conviction, independent of authority, but the great weight of authority is to the same effect. (*People* v. *Gray,* 61 Cal. 164, 183; 44 Am. Rep. 549; *Leighton* v. *Sargent,*

31 N. H. 119; 64 Am. Dec. 320; *Brant* v. *Fowler*, 7 Cow.
562; *People* v. *Douglass*, 4 Cow. 26; 15 Am. Dec. 332; *Wilson* v. *Abrahams*, 1 Hill, 207; *Jones* v. *State*, 13 Tex. 168;
62 Am. Dec. 550; *State* v. *Baldy*, 17 Iowa, 39; *Ryan* v.
*Harrow*, 27 Iowa, 494; 1 Am. Rep. 302; *Davis* v. *State*,
35 Ind. 496; *State* v. *Bullard*, 16 N. H. 139; *Pelham* v.
*Page*, 6 Ark. 535; *Gregg* v. *McDaniel*, 4 Har. (Del.) 367.)

In the case of *People* v. *Douglass, supra*, the court said:
" It will not do to weigh and examine the quantity which
may have been taken by the juror, nor the effect produced." And in *Leighton* v. *Sargent:* "For the cause
that brandy was furnished to the jury, and drank by
several of them, while deliberating upon the cause, after
retiring to form their verdict, we think the verdict must
be set aside. The quantity drank was probably small,
but we cannot consent that that fact should make a difference."

So in *State* v. *Baldy:* "The parties have a clear right
to the cool, dispassionate, and unbiased judgment of each
juror, applied to the determination of the issues in the
cause; and the use in any degree of that which stimulates the passions, and has a tendency to lessen the
soundness of judgment, is itself conclusive evidence that
the party who has the right to the exercise of that dispassionate judgment has been prejudiced in not having
it, as perfect as it existed in the juror when accepted,
applied to the determination of the cause. If this is
true as a general rule, and as applicable to civil cases, *a
fortiori* is the rule applicable in criminal cases, and
especially in this case, in which the offense charged involves obedience to passions stimulated more than others
by the use of spirituous liquors, and of course, in its
correct determination, requiring the most careful guarding against undue influence from them." And in *Davis*
v. *State* it is said: "The bailiff, we may presume, had
been sworn, in the usual form, to take charge of the jury,
and keep them together without meat or drink, water

only excepted, etc.   The jurors had taken upon them an oath well and truly to try the cause, etc., and had been solemnly sent out to deliberate upon questions involving the life of an unfortunate fellow-being.   If misbehavior, such as that shown by the affidavits, and which is without attempted palliation or justification, should not be regarded as sufficient to set aside the verdict, it would be a stigma upon the law and a disgrace to the courts.   We do not mean to say that the court should enter upon the question as to how far such conduct was or was not excusable or innocuous.   It will be time to decide that question when it shall come up.   In this case it does not arise.   We concede that on this point the authorities are not uniform.   But as to the sufficiency of such misbehavior, unexplained, to set aside the verdict, the authorities are abundant and satisfactory."   Also in *State* v. *Bullard:* "There had indeed been other acts of misconduct in the case, but we think that the old law forbidding the use of refreshments at all to jurors deliberating upon a verdict, although relaxed materially from its early severity, has not yet so far yielded as to exempt them wholly from the control of the court in this particular. And we are of the opinion that the use of stimulating liquors by a jury deliberating upon a verdict in a criminal case, without first showing a case requiring such use, and procuring leave of court for that purpose, is a sufficient cause for setting aside a verdict found against the prisoner in such circumstances, whether the use was an intemperate one or otherwise."

The respondent cites the following authorities, not already referred to, as opposed to the doctrine that the mere fact that the jury drank intoxicating liquors is sufficient to set aside the verdict, without a showing that it did or might have affected the result: Pen. Code, sec. 1181, subd. 3; *People* v. *Williams,* 24 Cal. 31; *People* v. *Brannigan,* 21 Cal. 339; *People* v. *Symonds,* 22 Cal. 349; *People* v. *Dennis,* 39 Cal. 625; *People* v. *Turner,* 39 Cal.

370; *People* v. *Anthony,* 56 Cal. 397; *People* v. *Lyle,* 4 Pac.
Rep. 977; 1 Bishop on Criminal Proceedings, sec. 999;
*State* v. *Caulfield,* 23 La. Ann. 148; *Davis* v. *People,* 19 Ill. 74;
*Thompson's Case,* 8 Gratt. 657; *State* v. *Upton,* 20 Mo. 398;
*Rowe* v. *State,* 11 Humph. 492; *Roman* v. *State,* 41 Wis. 312;
*Westmoreland* v. *State,* 45 Ga. 225; *Kee* v. *State,* 28 Ark. 155;
*Russell* v. *State,* 53 Miss. 382.

We have given these authorities our careful attention,
and find that, while they support the general rule that
misconduct of the jury should not avoid a verdict unless
it appears to have injured the complaining party, in our
judgment they do not shake the well-established and
salutary rule above laid down, when applied to a capital
case, where the misconduct occurred while the jury were
actually deliberating upon their verdict.

Section 1181 of the Penal Code, relied upon by the re-
spondent, provides (subdivision 3) that a new trial may
be granted to the defendant "when the jury has separated
without leave of the court, after retiring to deliberate
upon their verdict, or been guilty of any misconduct
by which a fair and due consideration of the case has
been prevented." It is urged upon us that the section
referred to sets forth and limits the kind of misconduct
for which a new trial may be granted, and that to author-
ize the setting aside of the verdict, it must affirmatively
appear that a fair and due consideration of the case is
prevented. Such a construction of the statute would
compel a defendant, in every case of this kind, to show
affirmatively that he had been actually injured by the
misconduct complained of. None of the cases cited go
to that extent, and if they did, we should not be inclined
to follow them. That the jury in this case was guilty of
misconduct, we presume none will deny. The wrongful
act committed was one the direct tendency and natural
consequence of which was to affect their capacity to per-
form their duties. Such being the nature of the mis-
conduct complained of, and the act being committed at

the most critical time in the trial, when a cool head and unclouded brain were so essential to the preservation of the rights of the defendant, to allow the verdict to stand could not, in our judgment, be justified by any rule of law, reason, or justice.

Of the many cases cited by respondent, there is but one where the punishment was death, and in none of them was the liquor drank while the jury were deliberating upon their verdict. In most, if not all, of them, it is conceded that the act was reprehensible, and should be punished; but they say that as the act was committed at a time during the progress of the trial, when it affirmatively appeared that no injury could have resulted, the verdict should not be disturbed. Thus in *Russell* v. *State, supra,* the court said: "No cause can be more baneful to the purity of a verdict than the use of intoxicating drinks by the jury while engaged in their deliberations. Nothing can be more revolting to a sense of justice or of decency than the idea of the life or liberty of a citizen depending upon the maudlin deliberations of drunken jurors. The parties in a civil suit, and *a fortiori* the defendant in a criminal prosecution, have the right to demand that the case shall be tried, not only by jurors who are not drunk, but by men whose minds are not even influenced or clouded by liquor. Intoxicating liquors as a beverage, therefore, should be rigidly and carefully excluded from the jury-room; and if absolutely necessary for medical purposes, should be administered only in small portions, upon the prescription of a physician, and under the sanction of the judge. But while the introduction of such liquors in any other manner is highly censurable, and should be the subject of exemplary punishment, it will not vitiate the verdict, if it can be affirmatively shown not to have injuriously affected the deliberations of the jury. The trial lasted five days. The liquor was given to the jury on the night of the second and early in the morning of the third day.

The state had not then closed its testimony in chief, nor
the defendant commenced his.   The quantity of liquor
was small, and a portion of the second supply was drunk.
Several of the jury are proved to have been affected by
the spoilt beef, and it is stated that a number of them
partook of the liquor.   The quantity was therefore pre-
sumably insufficient to have seriously affected the minds
of any of them.   In addition, it was received at night
and early in the morning, some hours before they were
called upon in court to listen to testimony, and two days
before they retired to consider their verdict.   Lastly, it
is proved that ' their conduct during the whole trial was
marked by great dignity, decorum, and propriety.'   Un-
der these circumstances, we think it may be fairly said
that it has been affirmatively shown that the verdict was
not affected by the liquor."

   In the case of *People* v. *Lyle, supra*, this court said:
"The legal presumption is, that jurors perform their duty
in accordance with the oath they have taken (*People* v.
*Williams*, 24 Cal. 31); and that presumption is not over-
come by proof of the mere fact that during the trial,
which lasted over thirty days, two or three of the jurors,
after the adjournment of the court for the day, drank a
few glasses of liquor at the expense of the district attor-
ney; that one of them partook of a dinner at the house
of the same officer under circumstances which rendered
the act of invitation necessary, and of a supper at the
hotel of his associate counsel under like circumstances.
Such acts, however improper or indiscreet, could not in
themselves have affected the impartiality of any one of
the jurors, or disqualified him from exercising his pow-
ers of reason and judgment, and they will not warrant a
court in setting aside a verdict.   ' While the law,' says
Chief Justice Sharkey,' is rigidly vigilant in guarding
and preserving the purity of jury trials, yet it will not
for light or trivial causes impugn the integrity of juries,
or question the solemnity and impartiality of verdicts.'

(*Hare* v. *State*, 4 How. (Miss.) 187.) It is the settled rule that to warrant the setting aside of a verdict and granting a new trial, upon the ground of irregularities and misconduct of a jury, it must be either shown as a fact or presumed as a conclusion of law that injury resulted from such misconduct. When it is clear that the party against whom the verdict has been found was not injured by the misconduct, the verdict will not be disturbed."

It must be conceded that this case supports the contention of the respondent, but the facts are so different that it should have but little weight; and so far as it declares, in general terms, that to warrant the setting aside of a verdict, and granting a new trial, upon the ground of misconduct of a jury, it must be either shown as a fact, or presumed as a conclusion of law, that injury resulted from such misconduct, it is not in harmony with the cases on the question before us, nor does it coincide with our views on the subject, when applied to the circumstances of this case. In the case of *People* v. *Gray,* 61 Cal. 164, 186, 44 Am. Rep. 549 (decided by the court in Bank, all of the justices concurring), it was said: "It should be added here, that if it is necessary that intoxicating liquors of any kind should be drank by a juror, application for leave to do so should be made to the court, who can make such allowance as will be proper. Jurors should not be allowed to judge for themselves in this matter. A defendant in a criminal case should not be called on to consent; and in any case when the party consents, if the juror becomes intoxicated, the verdict should not stand. The purity and correctness of the verdict should be guarded in every way, that the administration of justice should not be subjected to scandal and distrust." And it was there held that liquors furnished the jury were not suitable food, such as they were allowed to have by section 1136 of the Penal

Code. The court below should have granted the defendant a new trial on this ground.

4. The appellant complains of one of the instructions of the court, in which it was attempted to define the right of self-defense. This instruction, taken alone, may be subject to criticism; but taking the instructions as a whole, we think the law on that point was fully and fairly stated.

5. The appellant asked leave of the court to cross-examine the parties who filed affidavits in support of the verdict of the jury, which was denied, and this is urged as error. The defendant was not entitled to such cross-examination as a matter of right. The court might, in its discretion, have allowed it, but the refusal to do so was not error.

Judgment and order reversed, and cause remanded for a new trial.

THORNTON, J., and SHARPSTEIN, J., concurred.

BEATTY, C. J., concurring. —I concur in the judgment, and in the opinion of Mr. Justice Works, except upon one point. It appears that after the case had been submitted to the jury, and they had been for three or four hours deliberating of their verdict, they were by direction of the court sent in custody of two sworn officers to dinner. They were taken by the officers to a public French restaurant, where, in accordance with the invariable custom of the place, they were served with six quart bottles (a half-bottle each) of California claret, which they consumed with their dinner, and a small modicum of brandy, which they used with their coffee. In other words, they had, under the sanction of the court, and in the presence and custody of its officers, an ordinary dinner in a respectable house, embracing only the usual concomitants of that meal at that place. As to whether the jurors were at all affected by the wine and brandy so partaken, the affidavits

were conflicting, but certainly there was ample evidence to warrant the judge of the superior court in finding that none of them were affected; and unless we are warranted in holding, as mere matter of law, that any drinking of wine by a jury, after retiring for deliberation, however moderate, and whether sanctioned by the trial court or not, is misconduct *per se,* or unless we can find as matter of fact that men who use wine and brandy in the manner and to the extent these jurors did, and as thousands of men do every day without impeachment of their sobriety or decorum, are thereby necessarily deprived of their ordinary judgment and discretion, we cannot say that this jury was guilty of misconduct, or the defendant prejudiced in this particular. There is, it seems to me, a clear distinction in principle between this case, in which the jurors did, openly and without attempt at concealment, what was apparently, if not expressly, authorized by the trial court, and that class of cases in which jurors have themselves clandestinely conveyed intoxicating liquors into the jury-room, or where, with their connivance, it has been smuggled in by other unauthorized persons. In such cases the means of procuring the liquor amounts in itself to grave misconduct, and evinces a total disregard on the part of the jurors of their obligations and of the rights of the parties. By reason of this distinction, we are not, in my opinion, constrained by the authorities to hold, and I am unwilling to say, that the jury in this case was guilty of misconduct.

McFARLAND, J., dissented.