[Crim. No. 47. Second Appellate District.—March 18, 1907.]

## THE PEOPLE, Respondent, v. THOMAS STOKES, Appellant.

CRIMINAL LAW—ROBBERY—EVIDENCE—DECLARATION OF CONSPIRATORS— CIRCUMSTANTIAL EVIDENCE OF CONSPIRACY.—Upon a trial for robbery, where the prosecution sought to prove a conspiracy to commit the crime, so as to justify evidence of the declaration of a co-conspirator that the prosecuting witness had ''lots of money,'' the conspiracy need not be established by direct evidence of the common design, but may be shown by circumstantial evidence sufficient to establish a *prima facie* case of an agreement to commit the crime.

ID.—ORDER OF PROOF OF DECLARATION AND CONSPIRACY—DISCRETION OF
COURT—CODE PROVISION NOT MANDATORY.—The order in which the
proof of the declaration of the co-conspirator and of the existence
of the conspiracy may be admitted rests largely in the discretion of
the trial court, which may permit the declaration to be first proved,
under a proposal of the prosecution to supply proof of the con-
spiracy to rob. The provision of subdivision 6 of section 1870 of
the Code of Civil Procedure allowing proof of the act or declaration
of a conspirator, after proof of the conspiracy, is not mandatory.

ID.—EVIDENCE TENDING TO SHOW CONSPIRACY—QUESTION FOR JURY—
INSTRUCTION—CONCLUSIVENESS OF VERDICT.—Where all the evi-
dence bearing upon the question of the alleged conspiracy tends
to prove it, its existence is a question of fact for the determination
of the jury; and where, under proper instructions as to the effect
of reasonable doubt on that question, the jury found that the agree-
ment of the conspirators to rob was made, its verdict is conclusive
of that fact.

ID.—DUAL FUNCTION OF EVIDENCE OF CONSPIRACY—GUILT OF DEFEND-
ANT.—The evidence of the independent facts and circumstances
which show the conspiracy to rob may at the same time supply evi-
dence tending to prove the guilt of the defendant on trial; but the
fact that it performs such dual function is no reason for excluding
it.

ID.—EXISTENCE OF MONEY ROBBED—KNOWLEDGE BY ONE CONSPIRATOR
IMPUTABLE TO ALL.—The existence of the conspiracy to rob the
prosecuting witness being proved, the knowledge of one of the con-
spirators, however acquired, that he had a large sum of money, if
acquired at any time before the consummation of the crime, was im-
putable to all of the conspirators, including the defendant on trial.

ID.—IMPEACHING EVIDENCE—FOUNDATION NOT LAID.—Witnesses for the
prosecution cannot be impeached by their evidence given on a for-
mer trial where no foundation was laid for such impeachment as
required in section 2052 of the Code of Civil Procedure.

ID.—ADMISSION BY DEFENDANT NOT AMOUNTING TO CONFESSION—PRE-
LIMINARY PROOF NOT REQUIRED.—An admission made by the de-
fendant in conversation with the sheriff while in custody, not involv-
ing a confession of the crime, which was negatived by him, but
tending in connection with other facts proved to show his guilt,
was admissible in evidence against him, without any preliminary
proof that the admission was voluntarily made.

ID.—ERROR NOT AFFECTING SUBSTANTIAL RIGHTS.—Any error in the ad-
mission of evidence or in any ruling of the court, not appearing to
affect the substantial rights of the defendant, must be disregarded.

ID.—DELAY IN PASSING SENTENCE—POSTPONEMENT—JURISDICTION NOT
LOST.—The delay in passing sentence upon the defendant at the
time fixed therefor, and the postponement thereof for thirty-five

days, shows no loss of the jurisdiction of the court to pronounce sentence.

ID.—JUDGMENT OF SENTENCE NO PART OF TRIAL.—Pronouncing judgment, which is the formal declaration of sentence, is not the trial, nor any part thereof, within the meaning of section 13, article I of the constitution.

ID.—END OF TRIAL—VERDICT.—The trial ended with the announcement of the verdict of the jury upon the issue of fact submitted to it for its decision.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Alfred Daggett, and H. T. Miller, for Appellant.

U. S. Webb, Attorney General, and E. E. Selph, Deputy Attorney General, for Respondent.

SHAW, J.—The defendant was convicted of the crime of robbery, and prosecutes this appeal from the judgment, as well as from an order of the court denying his motion for a new trial.

The case was tried upon the theory that defendant Stokes, a man by the name of Kincaid, and one Mart Bennett formed a conspiracy to commit the robbery. The latter was called as a witness and testified on behalf of the prosecution. It appears from his testimony that he was a self-confessed, active participant with defendant in the commission of the crime.

The facts, briefly stated, are that on the night of October 18, 1905, one Owen Connolly was robbed in the back yard of the Visalia House in the city of Visalia. He had on the day before come to Visalia from Millwood, where he had been working, and had brought with him the proceeds of his labor consisting of several hundred dollars. There was adjoining the office of the Visalia House a saloon and bar, and at the time William Kincaid was the bartender in charge thereof. During the evening of October 18th, Connolly spent most of his time in this bar, and it seems became quite well acquainted with Kincaid, and the latter had learned of

the fact that Connolly had upon his person a considerable sum of money.

During the daytime, and until about 11:25 P. M. of October 18th, when he arrived at Visalia, going immediately to the Visalia House saloon, the defendant was in Tulare City. Prior to his arrival Connolly had applied to the clerk of the Visalia House for a room. The clerk demanded payment in advance, and Kincaid paid to the clerk the amount demanded for the room, at the same time telling the clerk that he, Connolly, had lots of money, and if he, Connolly, paid him for the bed, the clerk should return to him, Kincaid, the sum paid by the latter.

The first alleged error in the record to which our attention is directed was the ruling of the court in permitting the hotel clerk to state what was said by Kincaid upon the occasion of his paying for this room for Connolly's use. It was and is now claimed by defendant that the evidence sought to be adduced by the question calling for this conversation was irrelevant, incompetent and immaterial to any of the issues in the case; that the conversation did not take place in the presence of the defendant, and that there was no evidence introduced that tended to show any relation between Kincaid and defendant and Connolly, who was robbed. Whereupon the district attorney stated to the court that he proposed to make that connection. Defendant's objection was thereupon overruled.

The same objection was interposed to like questions throughout the trial, and the rulings of the court were adverse to defendant.

Defendant contends that there was no evidence tending to establish any conspiracy or other unlawful relation between Kincaid and defendant, and that hence, under section 1848, Code of Civil Procedure, defendant could not be prejudiced by any act or word of Kincaid not occurring in his presence. And further, that subdivision 6 of section 1870 provides that it is only after proof of a conspiracy that evidence of the act or declarations of a conspirator can be offered against his co-conspirator. Defendant places great weight on the word "after." We cannot, however, agree with counsel in his contention upon that point.

It is not often that direct proof of a common design to commit a crime can be had; its existence is usually established

by independent facts, which, although they may be remote
from the main subject of inquiry, and, standing alone, seem
of little importance, but nevertheless when all are taken to-
gether are amply sufficient to establish a *prima facie* case of
the existence of an agreement to commit a crime. Con-
spiracy, like any other fact in issue, may be proved by cir-
cumstantial evidence, and, notwithstanding subdivision 6 of
section 1870, Code of Civil Procedure, the order in which the
evidence may be introduced must rest largely with the trial
judge. The provisions of the code cited are not mandatory.
(*People* v. *Compton,* 123 Cal. 408, [56 Pac. 44] ; *People* v.
*Donnolly,* 143 Cal. 394, [77 Pac. 177].) ·

The prosecution here, in substance, stated, in reply to the
objection, that it would show the relation existing between
Kincaid and defendant; that the act or circumstance was
merely a link in the chain of circumstances going to establish
the relation of conspirators, and showing defendant's con-
nection with the crime. Under the circumstances of this case,
we find no fault with the course adopted by the trial court.
(*People* v. *Daniels,* 105 Cal. 262, [38 Pac. 720].)

If all the evidence bearing upon the question of the alleged
conspiracy, taken together, tends to establish its existence,
it then becomes, like any other fact pertaining to the subject
of inquiry, a question for the determination of the jury.

Where the existence of a conspiracy is one of the issues,
independent facts and circumstances which establish it may
at the same time supply evidence tending to prove the guilt
of a conspirator on trial, but the fact that it performs the
dual function is no reason for excluding it. There were three
alleged conspirators here, but it was Kincaid's conduct, acts
and movements which were the subject of inquiry when the
alleged errors were committed, and his conduct, conversation
and acts during the period covered by the inquiry were not
only competent and material as tending to show the existence
of a common design between him and the defendant to com-
mit the robbery, but, at the same time, in case the jury found
the conspiracy to be actually established, constituted evidence
tending to establish defendant's guilt.

Taken together, the circumstances and facts disclosed
tended to show that the conspiracy existed, and the jury
were instructed that; "if not satisfied from the evidence be-
yond all reasonable doubt that there was an agreement and

understanding made and had between the said William Kincaid, Martin Bennett and the defendant to perpetrate the offense alleged in the information, then it is the duty of the jury to *disregard all the testimony* adduced in this case tending to prove any declaration, act or conversation of said William Kincaid and Martin Bennett, and each of them, made or done *in the absence of the defendant Thomas Stokes.*"

Under this instruction the jury found that there was such an agreement and understanding made, and its conclusion is final. (*People* v. *Fehrenbach,* 102 Cal. 394, [36 Pac. 678]; *People* v. *Donnolly,* 143 Cal. 394, [77 Pac. 177].)

Appellant lays much stress upon the fact that all the evidence relative to Connolly's having money shows a knowledge on the part of Kincaid only, and that this was acquired by Kincaid before the defendant arrived in Visalia. The existence of the conspiracy being shown, it must be presumed that the knowledge of all the conspirators was brought into play in the execution of the joint undertaking. The individual knowledge of each is imputed to all, and it is not material when or how this knowledge was acquired, provided it was before the consummation of the crime. The purpose of the robbery was to wrongfully obtain money, and evidence tending to show that the defendant knew that Connolly had money would show a motive for the crime. The jury being satisfied of the existence of the conspiracy had a right to presume that the defendant had the same knowledge and information relative to Connolly having money upon his person that Kincaid was shown to have had.

Upon cross-examination both Connolly and witness Wessendorf were interrogated as to their testimony given on a former trial, and objections were sustained. No foundation was laid for such impeachment. (Code Civ. Proc., sec. 2052; *People* v. *Fitzgerald,* 138 Cal. 41, [70 Pac. 1014].)

Later, the former testimony of Wessendorf was read to him and he answered the question.

The court ruled that witness Wessendorf might make an explanation of his testimony, to which ruling defendant excepts; but as it does not appear that the witness offered to make any explanation, such ruling could not affect the rights of defendant.

No exception was taken to the ruling of the court in sustaining objection to the question asked witness Bacon as to whether he was in the bar when they were talking about closing up the house; and the later question as to whether he took supper with the defendant that night was clearly objectionable for the reason that it was not cross-examination.

The sheriff, who placed the defendant under arrest, was permitted over objection of defendant to testify as to conversation had with him after he was placed in jail. It is urged that it does not appear that the statements made by defendant to the sheriff were voluntary, and defendant invokes the well-recognized rule applicable to confessions: "A confession, in criminal law, is the voluntary declaration made by a person who has committed a crime or misdemeanor to another, of the agency or participation he had in the same." (*People* v. *Strong,* 30 Cal. 151.)

The defendant does not admit that he had any agency in the commission of the crime, but, on the contrary, his statement as to his movements and whereabouts is calculated to negative any participation in it. Even if he made statements which in themselves did not involve his guilt, yet when connected with the other facts tend to prove him guilty, such admissions would nevertheless be competent without preliminary proof. (*People* v. *Le Roy,* 65 Cal. 613, [4 Pac. 649]; *People* v. *Ammerman,* 118 Cal. 23, [50 Pac. 15]; *People* v. *Jan John,* 144 Cal. 284, [77 Pac. 950].)

Witness Bentley, after stating that there was a jingle of some coin in the pocket of Connolly, the prosecuting witness, was asked with reference to what kind of coin it was. Objection was made to his testifying upon this subject. After testifying that he could tell the difference between gold and silver by the jingle or sound and that he had often noticed the difference, he was permitted to testify over defendant's objection that the jingle that he heard in the pocket of Connolly sounded to him like heavy gold. He does not state that it was gold, but merely that the jingle *sounded* like gold. In view of the test made as disclosed by the record, the evidence carried little weight and it cannot be said that defendant was prejudiced by its admission.

We have fully considered every alleged error occurring at the trial. Only one other merits notice. Connolly had been knocked down in the back yard of the Visalia House as he

was leaving a water-closet. After regaining consciousness he made his way to the door of the hotel and was let in by the clerk. Just what space of time elapsed after he was knocked down and his money taken before he again entered the hotel is not disclosed. Just before Connolly came in Kincaid and defendant came from the bar through the office of the hotel and entered a hall from which a stairway led upstairs, where defendant had a room. After the clerk had let Connolly into the hotel he, the clerk, went to the door, calling for the marshal, and during this time Kincaid came out from the hallway. The witness Deible was asked the following questions:

"What did he [Kincaid] do when he came into the room, where did he first go?"

"He walked up to the bar-room door, then he turned and he went back, I think, toward the main entrance that was on the east side, this hallway (showing on the map). He might possibly went out. I wouldn't be positive in regard to that."

Question: "What did you see Kincaid do after that? Now, I am not asking for anything he said, but what did you see him do?" Answer: "Well, Mr. Kincaid came back and he made the remark to—he walked over to the wash-bowl and he got a towel and he sponged Mr. Connolly off."

The witness Wessendorf, after stating that he saw Kincaid after the consummation of the robbery—after he came back into the hotel—was asked the question:

"Where did he come from?" Answer: "He must have come out from the stairs; he couldn't come from nowheres else, because the doors were all locked."

Question: "Where were you when you saw him?" Answer: "I was standing on the sidewalk hollering for the marshal when I saw Kincaid. I saw him come out of the office onto the street, and I saw him back in that office again wiping the blood off of Connolly. He had gone out onto the street before he wiped the blood off Connolly."

The sheriff, after stating that he arrested Kincaid, was asked:

"What was done with him when he was brought down?" Answer: "I asked him to remove his shoes, which he did, searched him and locked him up. He removed his shoes at my request and in my presence."

Defendant objected to all of these questions upon the ground that they were irrelevant, incompetent and immaterial, and related to what took place subsequent to the consummation of the alleged offense and not in the presence of defendant.

We are not unmindful of the general rule that evidence of the declarations and appearance of a co-conspirator directed to matters occurring after the commission of the offense, and not in the presence of the defendant on trial, is inadmissible. (*People* v. *Opie,* 123 Cal. 294, [55 Pac. 989]; *People* v. *Dilwood,* 94 Cal. 89, [29 Pac. 420].) The fact that Kincaid procured a towel and washed the blood from Connolly's face was, however, competent evidence as tending to corroborate Connolly's testimony that he had been knocked down; it tended to show his condition immediately after the robbery; that his face was covered with blood to such an extent that another, whether as an act of kindness or otherwise, deemed it necessary to remove the blood. It was an independent act, and where Kincaid came from and his movements around the saloon immediately preceding the act of washing Connolly's face were but recitals of the circumstances connected with the principal act of washing the face. They amounted to but a detailed history of the transaction, which tended to corroborate the statement of the prosecuting witness that, by force and violence, he had been robbed. Conceding the questions to be irrelevant and the testimony elicited incompetent, and for that reason 'erroneously admitted, still the evidence, so far as fixing the robbery upon Stokes, was of such a character as to be wholly immaterial and without any weight. The answers threw no light whatever upon the issue as to whether or not Stokes was a participant in the robbery. We are unable to see how it affected the substantial rights of the defendant, without which being made to appear affirmatively, the error, if any, must be disregarded. (Pen. Code, sec. 1258.) "If the evidence objected to had been excluded, we do not see how the jury could have entertained a doubt of the fact of the robbery, or of the identity of the defendant as one of the robbers." (*People* v. *Clark,* 106 Cal. 41, [39 Pac. 53].)

The jury rendered its verdict on March 19, 1906, and April 2d following was by the court fixed as the date of pronouncing judgment, which, however, upon motion of counsel for

defendant, was postponed to April 16th, and on that date, upon like motion, again postponed until April 30, 1906. Nothing further was done until June 4, 1906, when defendant was brought before the court for judgment, whereupon he objected to judgment being pronounced upon the ground that, by reason of the delay, had without defendant's consent, the court had lost jurisdiction to pronounce any judgment upon said verdict, and it is now claimed that the judgment entered is without authority, and therefore null and void.

At defendant's request, April 30th was the time fixed by the court for pronouncing judgment. There was, at most, a delay of thirty-five days, including intervening Sundays and holidays. We cannot assent to the proposition that, by reason of this delay, the court lost jurisdiction to pronounce sentence. The delay was undoubtedly due to the holidays proclaimed by the governor of the state and which continued throughout the month of May, 1906. It is not necessary to pass upon the question as to whether this holiday period of one month would excuse and justify an otherwise unwarranted delay, for the reason that we are of the opinion that, even though it be held that the act of pronouncing judgment is a part of the trial, the court did not, by reason of the postponement from April 30th to June 4th, lose jurisdiction in the matter.

A trial is "the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause, for the purpose of determining such issue." (*Anderson* v. *Pennie,* 32 Cal. 267; *Tregambo* v. *Mining Co.,* 57 Cal. 501.) Pronouncing judgment, which is the formal declaration of sentence, is not the trial, nor any part thereof within the meaning of section 13, article I, of the constitution. (*Reed* v. *State,* 147 Ind. 41, [46 N. E. 135].) In a Missouri case (*State* v. *Watson,* 95 Mo. 415, [8 S. W. 383]), judgment was pronounced two years after verdict, and the court passing upon a statute requiring that defendant be brought to trial within a specified time after indictment, otherwise to be discharged, held that such limitation did not apply to the pronouncing of sentence. The supreme court in *People* v. *Felix,* 45 Cal. 163, upholds a sentence pronounced at the third term after conviction. The trial ended with the announcement of the verdict of the jury, whereby it de-

clared the result of its deliberations upon the issues of fact which had been submitted to it for its decision.

A careful examination of the voluminous record in this case impresses us with the fact that, notwithstanding the very able, ingenious and persistent effort of counsel to specify an error therein, such effort has failed, and the order and judgment should be, and are, affirmed.

Allen, P. J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 9, 1907.