[Crim. No. 1492.   Third Appellate District.—November 2, 1936.]

THE PEOPLE, Respondent, v. ANDREW MARECK, etc., Appellant.

Nathan C. Coghlan and William E. Ferriter for Appellant.

U. S. Webb, Attorney-General, and Wilmer W. Morse, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—Originally an indictment was returned charging defendant in count 1, of murder, in count 2, robbery of one Jack Snyder, in count 3, robbery of one Mabel Daniels, and count 4, of a prior conviction. No complaint is made of count 4, so we may disregard it in our consideration of the objections to be noted later.

To this indictment a demurrer was interposed alleging in effect that more than one offense was attempted to be charged; that it did not appear that the several offenses were connected in their commission, and that they were not

offenses of the same class as required by section 954 of the Penal Code.

This demurrer was sustained and the court ordered the indictment amended, which was done by the addition by the district attorney of an allegation in each of the three counts that the crimes charged in the various counts were all connected in their commission. A demurrer interposed to this amended indictment was overruled, and upon the trial the defendant was convicted of first degree crimes on all the charges and his previous conviction found to be true. From the judgment of conviction and the order denying a new trial this appeal is taken.

The first point urged by appellant was that these amendments to the indictment by the district attorney were illegal for the reason the amendments concerned a subject which was in the exclusive province of the grand jury to determine and that the allegations were contrary to the known facts. The amendment made by the district attorney was by order of the court under the provisions of section 1008 of the Penal Code and consisted, as already pointed out, in the addition of an allegation that each of the first three counts of the crimes charged in the various counts were all connected in their commission. No change was made in the character of the crimes charged, the purpose and effect of the amendment being to set forth in specific terms that the various offenses were all connected with their commission and were part of the same act.

It is conceded by appellant that "this amendment might have been considered mere matter of form had the three offenses actually been committed in the same transaction and the indictment failed to have contained the necessary allegations to justify the joinder". If such was a fact we fail to see where appellant was prejudiced by the amendment. Each count was complete within itself and each was sufficient to and did support a separate verdict.

The evidence reveals and it is admitted by defendant that the robbery charged in count 3 was connected with the murder charged in count 1. The evidence also reveals that appellant, who resided in San Francisco, left that city late in the evening of February 25, 1933, in a green sedan, accompanied by his wife and one Feltz, also known as Hoyt, and drove to Santa Rosa, arriving there about 1

o'clock on the morning of February 26th. They registered at a hotel in that city, but during the day checked out and went to an apartment occupied by a man named Thatcher, where they were later joined by Cardinale and Jones, personally known to appellant. During the evening the five men went to a resort known as "101 Ranch" where the robbery charged in count 2 took place. They then returned to Thatcher's apartment, where they were joined by one Gingg, also an acquaintance of appellant. After remaining in the Thatcher apartment a short time, appellant and Gingg went to the Buon Gusto Hotel, had a few drinks, and then returned to the apartment. Then defendant, with Gingg in defendant's green sedan automobile, followed by Jones, Cardinale and Feltz in another car, returned to the Buon Gusto Hotel, where the murder charged in count 1 and the robbery charged in count 3 were committed. All of the crimes were committed the same evening within a space of time variously estimated from one to five hours, and were participated in by all of the men with the exception of Gingg, who was not present at the commission of the crime at the 101 Ranch.

A fair inference from the evidence is that these men conspired together and assembled at the Thatcher apartment for the purpose of engaging in a series of crimes and that the robbery at the 101 Ranch and at the Buon Gusto Hotel was the result of such conspircy; that the personnel of the gang was essentially the same throughout the evening; that appellant's green sedan was used in each instance to convey members of the gang to and from the scenes of the crimes, and that Thatcher's apartment was in each case the headquarters for operations. The fact, therefore, that defendant and his accomplices were engaged in a conspiracy to commit a series of crimes connects all of the crimes together in their commission sufficiently to entitle the prosecution to charge the defendant with such crimes in one indictment. However, even if it be conceded that the crimes charged were not connected in their commission and not properly joinable in one indictment, nevertheless the error had not resulted in a miscarriage of justice. (Sec. 4½, art. VI, Const.; *People* v. *Aguinaldo,* 3 Cal. App. (2d) 254 [39 Pac. (2d) 505].)

■ Appellant also complains that the sheriff of Sonoma County was permitted to testify that at the time of the trial he held warrants of arrest for two of the accomplices of appellant, and had been unable to effect their capture. Also complaint is made that an officer of the prison at San Quentin was permitted to testify that a picture in evidence was that of Hoyt, one of the alleged accomplices and that he knew him by name and number and had a certified copy of his commitment to the prison. Appellant contends that while the flight of an accomplice from the scene of the crime might be admissible as a part of the *res gestae*, his continued status, being an act of an alleged coconspirator after the termination of the conspiracy, could not bind appellant and was not admissible. Appellant cites in support of his position the case of *People* v. *Stanley*, 47 Cal. App. 113 [17 Am. Rep. 401]. However, in *People* v. *Lorraine*, 90 Cal. App. 317 [265 Pac. 893], the court in discussing the rule set forth in the Stanley case, *supra*, said:

"Assuming, however, for the purpose of discussion, that there is some remote analogy in fact or principle between the case at bar and the Lee Chuck (78 Cal. 317 [20 Pac. 719) and Stanley cases, it is evident that the latter are not to be taken as decisive of the present appeal, because the judgments of reversal therein were rendered during that period of time when it was the established law of this state that error being shown in the admission of testimony was presumed to be prejudicial unless the contrary clearly appeared. Since then, as is well known, an important change has been made in the state Constitution which effectually abrogated the rule theretofore governing appeals; and in the present state of the law, injury must affirmatively appear to the reviewing court, after an examination of the entire cause, including the evidence, and from the nature of the error itself, before a judgment of conviction will be reversed (*People* v. *Watts*, 198 Cal. 776 [247 Pac. 884]); and the burden of showing such prejudicial tendency of error is upon appellant. (8 Cal. Jur., p. 601.) . . . Even though it be assumed, therefore, that error was committed in admitting the testimony, it would not constitute ground for reversal, for, as held in *People* v. *Stokes*, 5 Cal. App. 205 [89 Pac. 997], evidence of the acts of a coconspirator after the accomplishment of the purpose of the conspiracy,

even though incompetent and erroneously admitted, is harmless if those acts throw no light upon the issue as to whether the alleged conspirator on trial was a participant in the commission of the crime.''

If, therefore, Hoyt was a fugitive at the time of the trial of appellant and his flight was indicative of guilt, it related only to the guilt of Hoyt, and standing alone, had no tendency to incriminate the appellant.

■ Certain portions of the closing argument of the district attorney to the jury calling to their attention previous murders of police officers, are cited as misconduct. It seems, however, from a reading of the portion of the arguments appearing in the record that the remarks of the district attorney were in response to something said by counsel for appellant. Section 7 of rule II of the Rules for the Supreme Court and District Courts of Appeal provides that whenever statements, opinions or arguments are made in response to any statement made by or on behalf of the defendant, such latter statement shall also be transcribed. No such statement or argument appears in the transcript. We are, therefore, unable to pass upon that objection. (*People* v. *James,* 133 Cal. App. 751 [24 Pac. (2d) 859] ; *People* v. *Lawyer,* 1 Cal. App. (2d) 1 [35 Pac. (2d) 1036] ; *People* v. *Gregory,* 12 Cal. App. (2d) 7 [54 Pac. (2d) 770] ; *People* v. *Bragdon,* 103 Cal. App. 20 [283 Pac. 881].)

In *People* v. *Bragdon, supra,* the court, in discussing alleged misconduct of the district attorney, in his argument said:

''Complaint is made of intemperate language used by the district attorney in his argument to the jury, made in reply to statements of counsel for the defendant. The transcript does not contain such statements, as required by rule II, section 7, of the Rules of the Supreme Court and District Courts of Appeal, and in the absence thereof this court is left in the dark as to the provocation, if any, which induced the district attorney to use the language of which complaint is made. The language so used is not of such character as to constitute prejudicial misconduct if the provocation was great.''

■ A point is made by appellant that the court erred in refusing to give a requested instruction on flight. The refusal was proper, for evidence of flight was not relied

upon as tending to show guilt. (Sec. 1127c, Pen. Code.) Certain other alleged errors are called to our attention, but, if errors, they were harmless and appellant was not prejudiced thereby.

A review of the entire evidence must convince any unbiased mind that the defendant was fairly tried and justly convicted, and in spite of the exceptions taken to the amendment of the indictment, the admission of certain evidence, and failure to give certain instructions, and the alleged misconduct of the district attorney, it does not appear that the defendant was prejudiced thereby or precluded from offering a full defense nor was he prevented from receiving a fair trial upon the issues presented. We fail to see how a jury could have reached any other verdict upon the evidence properly admitted than that which they did.

The judgment and order from which the appeal is taken are affirmed.

Plummer, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 30, 1936.